## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

```
--------------------------------------------------X
MIKE PIECZYNSKI, Individually and          :
On Behalf of All Others Similarly          :
Situated,                                  :
                                           :  Case No. 6:20-cv-01457-CEM-DCI
                    Plaintiff,             :
        -against-                          :
                                           :
LCA VISION, INC. d/b/a LASIKPLUS,          :
                                           :
                    Defendant.             :
--------------------------------------------------X
```

## PLAINTIFFS' UNOPPOSED MOTION FOR ORDER
## APPROVING SETTLEMENT OF COLLECTIVE ACTION

Plaintiff Mike Pieczynski (the "Named Plaintiff") along with Opt-in Plaintiffs Catherine Nolte and Megan Lindahl (collectively "Plaintiffs"), individually and on behalf of the conditionally-certified collective, file this Unopposed Motion for Order Approving Settlement of Collective Action and request that the Court approve the Parties' Settlement Agreement and Release (the "Agreement") and dismiss this action with prejudice.

## I.    INTRODUCTION

The settlement memorialized in the Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange, discovery, and contested litigation; was the result of arm's length settlement negotiations

conducted by experienced counsel well versed in the applicable law; and was facilitated by a neutral mediator. Accordingly, Plaintiffs request, and Defendant LCA Vision, Inc. d/b/a LasikPlus ("LasikPlus" or "Defendant") does not oppose, that the Court enter the Proposed Order, attached hereto as Exhibit 1, which (1) approves as fair, adequate and reasonable the $215,000.00 gross settlement set forth in the Agreement (Exhibit 2); (2) approves the proposed Notice Form attached to the Agreement (Exhibit B thereto), and the proposed distribution method; (3) approves the award of the Attorneys' Fees and Costs Fund of $105,000.00 to compensate Plaintiffs' Counsel for their attorneys' fees, out-of-pocket expenses and the anticipated Settlement Administrative Costs; (4) approves General Release Payments of $5,000.00 each to Named Plaintiff Mike Pieczynski and Opt-in Plaintiff Megan Lindahl and $2,500.00 to Opt-in Plaintiff Catherine Nolte; (5) approves Simpluris as the Settlement Administrator; (6) dismisses this lawsuit with prejudice; (7) retains jurisdiction to enforce the settlement; (8) closes this case and denies all pending motions as moot; and (9) grants any other further relief that this Court deems just and proper.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2020, Plaintiffs' Counsel began investigating allegations that Center Directors, Center Leaders, Center Managers and employees in similar positions with different job titles (collectively, "CDs") employed by Defendant

had been misclassified as exempt under the FLSA, and thus, had worked uncompensated overtime hours. Notwithstanding this classification and title of "manager," Plaintiffs claimed that CDs did not regularly perform "management duties" such as hiring, firing, disciplining, or setting rates of pay for employees. Rather, Plaintiffs contended that CDs' primary duties were substantially similar to those of non-exempt employees and included: operations duties; selling services and financing plans; answering phones; and clerical and data entry duties. Plaintiffs further claimed that CDs were expected to, and regularly, did work more than 40 hours per workweek without overtime compensation, in violation of the FLSA.

On June 5, 2020, Plaintiffs' Counsel contacted Defendant regarding the potential unpaid overtime claims of CDs and invited Defendant's pre-litigation response. Specifically, Plaintiffs' Counsel summarized the unpaid overtime claims of CDs and invited Defendant to engage in a dialogue regarding the possibility of a pre-litigation resolution of the potential claims.

Pre-suit negotiations did not materialize and on August 12, 2020, Named Plaintiff filed the instant collective action lawsuit. D.E. 1. Defendant filed its Answer and Defenses, in which it denied liability and asserted various affirmative defenses, including exemptions. D.E. 11. Shortly thereafter, Catherine Nolte and Megan Lindahl filed their consents to join and became

Opt-in Plaintiffs.  D.E. 10, 23.  All Plaintiffs filed their answers to mandatory Court Interrogatories.  D.E. 20, 21, 25.

After filing suit, Plaintiffs again approached Defendant in an effort to engage in early litigation settlement discussions.  To facilitate these discussions, Defendant produced class data for the 38 CDs employed during the liability period as of that time.  Per the Court's Scheduling Order, in December 2020, the Parties participated in a mandatory settlement conference.  However, that session resulted in no further settlement movement on either side.  D.E. 22.  Pursuant to the Court's Scheduling Order, there was a period of 96 days when the statute of limitations was tolled for the putative collective.  D.E. 15.

Thereafter, the Parties submitted a Joint Proposed Scheduling Order, as required.  D.E. 24.  Following the filing of the Joint Proposed Scheduling Order, the Parties engaged in written discovery, including the negotiation of an ESI protocol.  In addition, Defendant deposed Opt-In Plaintiff Lindahl.

On May 7, 2021, Plaintiffs filed a Motion to Conditionally Certify an FLSA Collective Action.  D.E. 29.  On September 24, 2021, the Court issued an Order granting conditional certification and required that the Parties confer and file a proposed notice and motion for approval of that notice.  D.E. 36.  On October 21, 2021, the Parties filed their proposed notice with the Court.  D.E. 43.  On January 14, 2022, Magistrate Irick issued a Report and

4

Recommendation regarding the Parties' Joint Motion for Approval of Notice. D.E. 45. On February 1, 2020, the Court entered an Order adopting Magistrate's Report and Recommendation. D.E. 51.

Prior to notice being disseminated to the 33-person conditionally certified collective,[1] on February 2, 2022, the Parties again engaged in substantial, contested negotiations, this time with the assistance of Carlos J. Burruezo, an experienced mediator with expertise in complex wage and hour cases. The mediation was a success and the Parties agreed to settle the case. D.E. 52. On February 8, 2022, the Parties entered into a term sheet memorializing the material terms of the collective settlement. Thereafter, the Parties negotiated the details of the full and final settlement of this litigation, and drafted the Agreement. The Parties executed the Agreement on March 15, 2022. *See* Ex. 2 (Agreement).

Pursuant to the Parties' Agreement, if the Court grants this Motion for Approval, a class administrator, Simpluris, will issue the Notice Form along with an enclosed settlement check with a Consent to Join Form and release printed on the back to the 33 CDs who comprise the conditionally certified FLSA collective. ("Putative Collective Members").

---

[1] By the time conditional certification was granted and data was produced, five individuals' claims had already expired and no additional individuals were hired by Defendant.

The Agreement negotiated and executed by the Parties constitutes a reasonable compromise of all of the disputed issues raised by the CDs in this action.   All Parties were counseled and represented by their respective attorneys throughout the settlement process.   Moreover, the settlement was reached through the assistance of a qualified mediator.   Plaintiffs now seek Court approval of the Agreement.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   Financial Terms of the Settlement.

The Parties have agreed to the Total Settlement Amount of $215,000.00, allocated as follows: (1) to the "Plaintiffs' Fund," of a maximum of $110,000.00, to be paid by Defendant to Plaintiffs and Putative Collective Members;[2] and (2) to the "Attorneys' Fees and Costs Fund," a separately-negotiated amount of up to $105,000.00 to compensate Plaintiffs' Counsel for their fees and costs, inclusive of Settlement Administrative Costs.  *Id.* at § 1.19.

### B.   Notice of Settlement to Eligible Settlement Members and Opt-in Process.

After the Court enters the Approval Order, Defendant will provide a class list to the Settlement Administrator and Plaintiffs' Counsel with sufficient information to facilitate the settlement administration.  *Id.* at § 3.3

---

[2]     Any amounts approved by the Court for General Release Payments will be deducted from the Plaintiffs' Fund and the resulting fund will be the "Net Fund."  *Id.* at § 3.4 (a).

(a).   Within twenty-one (21) days after the Effective Date, as defined in the Agreement, the Settlement Administrator shall mail, via First Class U.S. mail, the Notice as well as an enclosed settlement check with a Consent to Join Form and release printed on the back (collectively, "Notice Packet") to all Putative Collective Members.  *Id.* at § 3.3 (b).[3]   Each Notice will advise the recipient of his or her proportional share of the Plaintiffs' Fund and that the allocation was calculated based on the number of weeks the individual worked as an exempt-classified CD during the Relevant Period.[4]  *Id.; see also* Ex. B to the Agreement (Notice).   Moreover, as fully described in the Notice, because the Consent to Join Form is printed on the back of the settlement check, each Plaintiff and Putative Collective Member will be advised that:

> [b]y signing the Consent to Join and Release on the back of the enclosed Settlement Check and/or depositing/cashing the Settlement Check, [the Putative Collective Member will] agree to (i) join this lawsuit as an "Opt-in Plaintiff," (ii) participate in the settlement, (iii) collect [their] monetary settlement payment, and (iv) release [their] overtime claims.

Ex. B to the Agreement (Notice); *see also* Ex. 2 at § 4.6.   Each Plaintiff and Putative Collective Member will also be advised that by not signing the

---

[3]     The Settlement Administrator will also email the Notice to all Plaintiffs and Putative Collective Members.  *Id.* at § 3.3 (b).

[4]     The "Relevant Period" is defined as their earlier of (i) three years prior to the filing of their consent to join forms in this case; and (ii) November 18, 2018 through February 8, 2022.

Consent to Join Form and release that they would not be releasing any claims and they would preserve their right to sue Defendant independently.[5]  *Id.*

### C. Allocation Formula and Payment Details.

Pursuant to § 3.4 (b) of the Agreement, each Plaintiff and Putative Collective Member shall be allocated settlement payments on a *pro rata* basis, based on the number of workweeks worked as an exempt-classified CD during the Relevant Period, per Defendant's business records.  In addition, Plaintiffs will each be receiving General Release Payments in exchange for granting Defendant a general release of claims, as discussed in more detail, *infra*.[6] Simpluris, the proposed Settlement Administrator, will establish a Qualified Settlement Fund, which Defendant would fund, and from which the Settlement Administrator would remit payment to Plaintiffs and Putative Collective Members.  *Id.* at § 4.2.  Fifty percent (50%) of the individual shares of the Plaintiffs' Fund shall be treated as wages (and subject to required withholdings and deductions and reported as wage income), and the remaining fifty percent (50%) of each such adjusted payment shall be treated as liquidated damages, interest and other non-wage recovery.  *Id.* at § 4.4.

---

[5]    This Notice will further warn Putative Collective Members of the running of the relevant statute of limitations and that their ability to bring claims pursuant to the FLSA is limited by such.  *Id.*

[6]    Specifically, Named Plaintiff Mike Pieczynski and Opt-in Plaintiff Megan Lindahl will each receive $5,000.00 and Opt-in Plaintiff Catherine Nolte will receive $2,500.00. *Id.* at § 1.19 (b).

Plaintiffs and Putative Collective Members will have one hundred twenty (120) days from the date the Notice Packet is issued to endorse their enclosed settlement check, thereby submitting their Consent to Join Form. *Id.* at § 4.6. Any portion of the Plaintiffs' Net Fund not distributed shall revert to Defendant, to the extent permitted by the Court. *Id.* at § 4.7. If reversion is not permitted by the Court, any unclaimed funds (i.e., funds allocated to Putative Collective Members who do not endorse their enclosed settlement check, thereby submitting their Consent to Join Form) shall be transferred to Florida Legal Services as the *cy pres* recipient, or some other entity as *cy pres* recipient as approved by the Court. *Id.*

### D. Releases

Those Putative Collective Members who consent to join this lawsuit by endorsing the Consent to Join Form and release on the back of the Settlement and/or otherwise negotiating same, will release Defendant (as defined in the Agreement), from any and all wage and hour claims that were brought or could have been brought in this case related to their employment as an overtime-exempt classified CD which accrued at any time up to and including February 8, 2022. *Id.* at § 5.1 (a).

Each Plaintiff also will provide a general release of claims against Defendant in exchange for a General Release Payment (subject to Court approval). *Id.* at § 5.1 (b).

E.     **Attorneys' Fees and Litigation Costs**

Under the terms of the Agreement, subject to Court approval, Plaintiffs' Counsel is to receive $105,000.00, for attorneys' fees and costs, inclusive of the Settlement Administrative Costs. *Id.* at § 1.19 (c). Defendant does not oppose this payment. As more fully described below, this amount was separately negotiated only after the amount in the Plaintiffs' Fund was settled.

IV.    **ARGUMENT**

A.     **Standards for FLSA Settlements**

The Parties to an FLSA action can resolve the dispute and enter into a valid waiver of an employee's FLSA claims where:  (i) the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor, or (ii) the Parties present a proposed settlement to a district court which approves the fairness of the settlement. *See Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in

10

dispute, we allow the district court to approve the settlement in
order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. This Court adheres to these Eleventh Circuit standards. *Teneus*
*v. JMC Quality Builders Corp.*, 2016 U.S. Dist. LEXIS 196037, at *2 (M.D. Fla.
Sept. 2, 2016) (Mendoza, *J.*).

"In deciding whether a settlement is fair and reasonable, the court
considers the following factors: '(1) the existence of fraud or collusion behind
the settlement; (2) the complexity, expense, and likely duration of the
litigation; (3) the stage of the proceedings and the amount of discovery
completed; (4) the probability of plaintiffs' success on the merits; (5) the range
of possible recovery; and (6) the opinions of the counsel.'"[7]  *Trentman v. RWL*
*Communs., Inc.*, 2015 U.S. Dist. LEXIS 113966, at *4 (M.D. Fla. Aug. 26, 2015).
An FLSA settlement may be approved as fair even where plaintiffs receive in
settlement substantially less than the amount they originally claimed.
*Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, 2008 U.S. Dist. LEXIS
61776 (M.D. Fla. July 29, 2008).  Discovery – including the production of
records – as well as the risks associated with litigation and the viability of
certain defenses, all may cause a plaintiff to settle for substantially less than
the original amount claimed.  *See id.* (approving FLSA settlement where

---

[7]    With regard to the first of the six factors, there is no fraud or collusion here, and
nothing in the record to date even remotely suggests any taint to the settlement.  The other
five factors are addressed and incorporated herein, *infra*.

named plaintiff settled for approximately 6% of the wages she originally claimed); *Edwards v. CFI Sales & Mktg.*, 2011 U.S. Dist. LEXIS 134705, at *13 (M.D. Fla. Nov. 4, 2011) (approving settlement where plaintiffs recover was well below that stated in court interrogatories). In addition, the dispute over the proper method for calculating damages ("time-and-one-half" versus the "half-time" or "fluctuating workweek" method), liquidated damages and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement than originally claimed. *See Ford v. Property Preservation Experts, Inc.*, 2012 U.S. Dist. LEXIS 107194 (M.D. Fla. July 31, 2012) (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages). In short, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Id.* at *3 (internal citations omitted).

**B.    This Settlement Represents a Fair and Reasonable Resolution of a Bona Fide Dispute.**

The settlement is fair because it is a reasonable compromise of a bona fide dispute regarding Plaintiffs and Putative Collective Members' unpaid wages, reached via arms' length negotiation between adversarial parties and counsel, necessitating the aid of a mediator to reach resolution. This dispute was a hotly contested litigation in which Defendant put forth significant evidence of several affirmative defenses, which may have presented barriers to

Plaintiffs' success on the merits, making continued litigation expensive and lengthy, with no certainty of success on the merits.

First, Defendant indicated that it intended to seek decertification of the collective because of the alleged differences between the duties and individualized circumstances of each Plaintiff and Putative Collective Member. Second, Defendant argued that the CDs' primary duties—that is, the primary duties of the highest-ranking, non-doctor employees in the office—were managerial in nature and CDs were exempt under the executive and/or administrative exemptions. Plaintiffs faced significant risk in their ability to prevail on these claims at trial. Third, Defendant argued that even if Plaintiffs prevailed on liability, damages should be calculated using the half-time/fluctuating workweek method, rather than the time and one-half method. Fourth, Defendant argued that it did not act willfully in allegedly violating the FLSA, such that a two-year, rather than a three-year, statute of limitations would be imposed and liquidated damages would be avoided. Fifth, like many employers in the age of COVID-19, Defendant's economic viability was impacted by the economic shutdown and slow recovery, such that this may be Plaintiffs' only opportunity to recover on these claims should protracted litigation ensue.[8] These issues, as well as others asserted by Defendant,

---

[8]    As evidence of Defendant's economic circumstances, in March 2020, Defendant terminated 15 of the 33 Putative Collective Members, and did not hire any CDs to replace them in these markets.

presented significant hurdles for Plaintiffs to overcome. However, through negotiation, the Parties reached a compromise that took into consideration all of these factors.

As a result of these negotiations, on average, each Plaintiff and Putative Collective Member's gross share of the settlement is approximately $3,484.85. This amount is in line with other similar doctor practice office manager misclassification cases. *See, e.g., Bageard v. Aspen Dental Mgmt, Inc.,* No. 16 Civ. 3086, D.E. 103 (M.D. Fla., Aug. 14, 2018) (gross average per person recovery of $4,285.37, inclusive of attorneys' fees, costs and administration expenses in common fund settlement in which Shavitz Law Group, P.A. was plaintiffs' counsel); *Weisgarber v. N. Am. Dental Grp., LLC,* No. 18 CV 2860, D.E. 156 (Mar. 1 2022) (gross average per person recovery of $2,980.88).

This recovery represents a fair and reasonable settlement given the risk of decertification, the defenses raised (including Defendant's contention that the position was properly classified as exempt), risk regarding Defendant's financial viability due to recent downsizing, uncertainties surrounding the amount of unpaid overtime claimed, and the potential application of a half-time measure of damages. Moreover, particularly given the layoff of nearly half of Defendant's CDs in 2020, Plaintiffs faced enormous risk regarding the issue of willfulness, which if Plaintiffs prevailed, would extend the statute of limitations period to a third year. 29 U.S.C. § 255 (a). If Plaintiffs failed to

14

meet their burden of proving that Defendant willfully violated the law, over 53% of the workweeks at issue would have been erased, six of the 33 Putative Collective Members would have no claims and another 14 Putative Collective Members would have less than 20 workweeks at issue (thus, only leaving 13 Putative Collective Members with substantial claims). Notwithstanding Plaintiffs' risk on willfulness, the Parties negotiated a statute of limitations period of more than a full three years to allow a larger number of individuals to benefit from the Agreement and receive a settlement award.

Given these factors, Plaintiffs' Counsel believe, based on their experience and professional judgement, that the settlement represents a fair and reasonable compromise of the disputed claims in this litigation.

### C.    The Proposed Notice Form Should Be Approved.

The Court should approve the proposed Notice Form attached as Exhibits B to the Agreement (Exhibit 2). The proposed Notice Form sufficiently informs each Putative Collective Member of the Agreement's terms, including the allocation formula and their individual, the scope of the limited release in the event they choose to participate (and that they will not release any claims if they choose not to participate), the applicable time-table, and the approved attorneys' fees and costs.

**D.    The General Release Payments Should Be Approved.**

The Agreement also provides for General Release Payments to the Plaintiffs. In this circumstance, the General Release Payments are specific consideration to Plaintiffs in exchange for a general release for their own, individual claims.[9] Such payments to named and opt in plaintiffs are routinely approved in FLSA collective actions as consideration for a separate, general release of claims.[10]

**E.    The Attorneys' Fees and Costs Fund Should Be Approved In Its Entirety.**

Under the terms of the Parties' Agreement, subject to Court approval, the Parties agree that Plaintiffs' Counsel will seek an award of attorneys' fees and reimbursement of reasonable litigation costs and expenses (inclusive of the Settlement Administrator's expenses) which shall not exceed $105,000.00, as

---

[9]    The general releases here are particularly reasonable in their breadth given that the statute of limitations would otherwise have already run for the majority of any other potential claims these three individuals would have against Defendant.

[10]    *See McGuire v. Intelident Sols.*, No. 18 Civ. 02995, 2020 U.S. Dist. LEXIS 257582, at *18 (M.D. Fla. Sep. 2, 2020) (granting $7,500 award to named plaintiff in exchange for general release of all claims); *Bageard,* No. 16 Civ. 3086, D.E. 103 (granting an additional $10,000.00 to an office manager in a dental practice misclassification collective action in exchange for a general release of claims); *Weisgarber,* No. 18 CV 2860, D.E. 156 (approving settlement that provided for a $5,000.00 service award to the named plaintiff; *Tam Su v. Electronic Arts, Inc.*, 2006 U.S. Dist. LEXIS 98894, *18 (M.D. Fla. Aug. 29, 2006) (granting additional $10,000.00); *see also Devries, et al. v. Morgan Stanley & Co. LLC, et al.*, No. 12 Civ. 81223 (granting additional award as high as $10,000.00 to plaintiff in collective action in exchange for general release); *Cooper-Gutteman, et al. v. TMS Health, LLC, et al.*, No. 13 Civ. 81265, D.E. 38 (S.D. Fla. July 15, 2015) (same); *Evans v. Comcast Corp., et al.*, No. 12 Civ. 81203, D.E. 157 (S.D. Fla. Oct. 22, 2014) ($15,000.00 additional award); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *91 (S.D. Fla. Mar. 18, 2013) ($10,000.00 additional award).

compensation for their work in this case and the additional work to be performed in connection with the administration of the settlement.

Importantly, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the back-wages and other payments to Plaintiffs and the Putative Collective Members. Rather, the attorneys' fees and costs are completely separate from the amount to be paid to Plaintiffs and the Putative Collective Members, such that their recoveries are not reduced due to the fees and costs incurred on their behalf. As a result, because the amount for attorneys' fees and costs was separately negotiated, any amount of the Attorneys' Fees and Costs Fund not approved by the Court will be kept by Defendant. Ex. 2 (Agreement) at ¶ 1.19 (c). Defendant does not oppose the amount to be allocated as attorneys' fees and costs as set forth in the Agreement.

### i. The Costs Incurred by Plaintiffs' Counsel are Reasonable.

Of the $105,000.00 sought for attorneys' fees and costs, $8,475.00 is to be paid to Simpluris for its services as Settlement Claims Administrator, including their fees and costs associated with formatting, printing and mailing the Notice; calculating individual settlement amounts and distributing Settlement Checks; determining and remitting tax withholdings; communicating with counsel for the Parties and Putative Collective Members;

17

and performing other activities and services associated with the administration of the settlement. Declaration of Gregg I. Shavitz in Support of Plaintiff's Unopposed Motion for Order Approving Settlement of Collective Action ("Shavitz Decl."), attached as Exhibit 3, at ¶ 35. This amount is reasonable for the administration of this settlement, particularly because Simpluris estimates it will have to make state tax filings in 22 different states due to the geographical disbursement of Defendant's workforce. *Id.* at ¶ 36. Simpluris is well regarded in administering class and collective action settlements and is fully equipped to administer this settlement, particularly given its modest size. See Ex. 4 (Simpluris Background).

Additionally, of the $105,000.00 sought for attorneys' fees and costs, $761.00 represents actual costs and expenses already incurred by Plaintiffs' Counsel, including court fees, service of process, and costs for hosting ESI produced by Defendant. Shavitz Decl. at ¶ 30. The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' Counsel, which are available for submission to the Court upon request. *Id.* at ¶ 31.

In total, costs attributed to the Attorneys' Fees and Costs Fund come to $9,236.00. Plaintiffs' Counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved. *Id.* at ¶ 32.

18

ii.    **The Attorneys' Fees Requested Are Reasonable.**

a.    **The Amount of Attorneys' Fees Represents a Negative Multiplier on Plaintiff's Counsel's Lodestar.**

The balance of the Attorneys' Fees and Costs Fund, after reduction for actual costs and expenses as discussed *supra*, comes to $95,782.00, representing an award of attorneys' fees for the work performed by Plaintiffs' Counsel. Plaintiffs' Counsel have incurred lodestar fees in the amount of $169,080.00. *Id.* at ¶¶ 22, 25. The work undertaken in the past two years includes the investigation and filing of the lawsuit, serving and responding to discovery, engaging in multiple lengthy discovery conferrals regarding purported discovery deficiencies, reviewing and analyzing thousands of pages of documents (including ESI), preparing for and attending Opt-in Plaintiff Lindahl's deposition, preparing for the 30(b)(6) deposition (which had been scheduled and postponed several times), briefing Plaintiff's  Motion to Conditionally Certify an FLSA Collective Action, conferring and briefing the scope and content of the proposed FLSA notice, preparing for and attending mediation, negotiating and drafting the settlement term sheet, negotiating and drafting the settlement agreement, and preparing the motion for approval. *Id.* at ¶ 21. This amount does not take into consideration the time to be incurred through completion of the settlement administration process, which based on Plaintiffs' Counsel's experience, will be significant and will include resolving

19

issues with the Settlement Administrator and Defendant's counsel, and speaking with Putative Collective Members about the administration and the settlement. *Id.* at ¶ 28.

Thus, the requested fee of $95,782.00 for Plaintiffs' Counsel's work is significantly less than the actual fees incurred (and to be incurred) and represents a "negative multiplier" of 0.57 or a 43% discount on Plaintiffs' Counsels lodestar (which will be further reduced through the completion of the administration process). *Id.* at ¶ 23. This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved, and is reflected in the detailed time records. *Id.* at ¶ 27. Plaintiffs' Counsel has expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation. *Id.* at ¶¶ 5-14. Plaintiffs' Counsel also ensured that there was not unnecessary time incurred, nor duplication of effort. *Id.* at ¶ 27.

**b.    The Amount of Attorneys' Fees Was Separately Negotiated And Therefore Does Not Adversely Impact the Recovery of Plaintiffs and the Putative Class Members.**

The settlement of attorneys' fees and costs was independent and agreed upon separately from the amounts calculated to be owed to Plaintiffs and the Putative Collective Members. *Id.* at ¶ 19. The amount of fees and costs were negotiated after the amount of back wages and other monetary payment was

negotiated for Plaintiffs and the Putative Collective Members. *Id*. It is in no way based upon a contingency or a percentage of the fund awarded to Plaintiffs and the Putative Collective Members. *Id*.

"The parties may demonstrate the reasonableness of the attorney fees . . . [if] the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim." *Dearth v. Hartford Fire Ins. Co.*, 2019 U.S. Dist. LEXIS 54069, at *7 (M.D. Fla. Mar. 28, 2019); *see also Teneus*, 2016 U.S. Dist. LEXIS 196037, at *3 (Mendoza, *J.*) ("where attorneys' fees were 'agreed upon separately and without regard to the amount paid to the plaintiff,' then, so long as the agreement is reasonable on its face and there is no indication that the amount of attorneys' fees adversely impacted the plaintiff's recovery, 'the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'"); *Garcia v. Regis Corp.*, 2016 U.S. Dist. LEXIS 196857, at *8-9 (M.D. Fla. Mar. 28, 2016) (Mendoza, *J.*) (same). "[W]hen attorney's fees are negotiated separately from the payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, *5 (M.D. Fla. Sept. 10, 2014) (citing *McGinnis v. Taylor Morrison, Inc.*, 2010 U.S. Dist. LEXIS 143198 (M.D. Fla. Jan. 23, 2010); *King v. My Online Neighborhood, Inc.*, 2007 U.S. Dist.

LEXIS 16135 (M.D. Fla. Mar. 7, 2007)) (internal bracket in original); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (same).  "As long as counsel does not seek to recover anything further from Plaintiff, the recovery is not compromised by the fee agreement and the Court sees no reason to review it further."  *Garzon v. ProSweep Cent. Fla., LLC*, 2011 U.S. Dist. LEXIS 134703, *6 (M.D. Fla. Nov. 17, 2011).  Thus, there is "no need to further scrutinize amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff." *Welch v. Moonlite Hospitality Servs., LLC*, 2011 U.S. Dist. LEXIS 137145, *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted); *Diaz v. Trailer Bridge*, 2019 U.S. Dist. LEXIS 235743, at *6-7 (M.D. Fla. Oct. 28, 2019) (same); *see also Perez v. Orlando Family Med.*, 2021 U.S. Dist. LEXIS 110174, at *6-7 (M.D. Fla. June 10, 2021) (fact that fees negotiated "separate and apart" from wage claims means the "amount of attorney's fees and costs to be paid under the settlement agreement could not have tainted the amount Plaintiff agreed to accept to settle the case.").[11]

---

[11]    Assuming, *arguendo*, that the attorneys' fee was not separately negotiated such that the Court needed to further analyze the reasonableness of the requested attorneys' fees, the requested attorneys' fees here would certainly meet that threshold.  In such "common fund" cases, courts have looked at: (i) the time and labor required;  (ii) the novelty and difficulty of the questions involved; (iii) the experience, reputation, and ability of the attorneys and the skill requisite to perform the legal services properly;  (iv) time limitations imposed by the client or the circumstances; (v) the amount involved and the results obtained;  (vi) the "undesirability" of the case; (vii) whether the fee is fixed or contingent; and (viii) the customary fee and awards in similar cases. *See Stahl v. Mastec, Inc.*, No. 05 Civ. 1265, 2008

For these reasons, the Attorneys' Fees and Costs Fund should be approved in its entirety.

## V.    AN OBJECTION PROCESS IS NOT WARRANTED

This case involves **only** an FLSA opt-in collective action and not a Federal Rule 23 opt-out class action.  Putative Collective Members who elect not to participate in the settlement will not release any claims.  Accordingly, there is no need for an objection process here as Putative Collective Members will not be bound by the settlement or release of claims unless they voluntarily choose to participate.

---

U.S. Dist. LEXIS 120887, at *4-5 (M.D. Fla. May 20, 2008).  Here, (i) Plaintiffs' counsel is taking a 36% discount on their lodestar [Shavitz Decl. at ¶ 23]; (ii) the case involves a complex collective action lawsuit with many difficult legal theories and defenses, all of which would require extensive further discovery and briefing; (iii) Plaintiffs' counsel has specific expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage and hour litigation [*see id.* at ¶¶ 5-14]; (iv) despite the delay in sending out notice which would have significantly reduced or even eradicated many Putative Collective Members' claims, Plaintiffs' counsel negotiated a settlement that extended the statute of limitations period more than three years; (v) Plaintiffs and Putative Collective Members are receiving a significant recovery in this lawsuit of $3,484.85 per person; (vi) this case was certainly "undesirable," particularly due to the significant erosion of the statute of limitations for the Putative Collective Members who have yet to join the case, uncertainty about the rate at which Putative Collective Members would join the case had Court-authorized notice been issued (rather than settlement notice), and the vast expenses of the forthcoming notice process, discovery, expert discovery and jury trial; (vii) Plaintiffs' counsel took this case on a contingency fee basis [*id.* at ¶ 15]; and (viii) the rates sought by Plaintiffs' Counsel, which were discounted at the beginning of the case due to the relative size of this putative collective, are in line with what has been granted in similar cases. *See Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *3 (E.D.N.Y. July 17, 2020) (finding Shavitz Law Group's lodestar estimate and requested fees to be reasonable, after the court reviewed "the billing rates for the respective attorneys"); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 17 Civ. 1266, 2021 U.S. Dist. LEXIS 33983, at *16-17 (M.D. Pa. Feb. 24, 2021) (approving attorneys' fee request based on rates of $750/hour, $575/hour, and $400/hour, for Gregg I. Shavitz, Paolo C. Meireles, and Logan A. Pardell, respectively, which are higher than their respective requested rates in this case).

In an "FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 708 (11th Cir. 2014). The Eleventh Circuit has also explained that "it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259, n. 36 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12) (11th Cir. 1996). For this reason, the due process considerations which are analyzed in the approval of a settlement of a Rule 23 opt-out class action are inapplicable to the approval of the settlement an FLSA opt-in collective action. *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983) ("the due process concerns [in Rule 23 opt-out class actions] . . . have no counterpart in a section 16(c) class action."); *see also Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (11th Cir. 1984) (same).

## VI.  CONCLUSION

The settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested. Accordingly, Plaintiffs respectfully request the Court approve the settlement as a fair and reasonable compromise of these contested FLSA claims.

WHEREFORE, the Plaintiffs respectfully request, and Defendant does no oppose, that this Court enter grant the Proposed Order attached hereto as

24

Exhibit 1, which (1) approves as fair, adequate and reasonable the $215,000.00 gross settlement set forth in the Agreement (Exhibit 2); (2) approves the proposed Notice Form attached to the Agreement (Exhibit B thereto), and the proposed distribution method; (3) approves the award of the Attorneys' Fees and Costs Fund of $105,000.00 to compensate Plaintiffs' Counsel for their attorneys' fees, out-of-pocket expenses and the anticipated Settlement Administrative Costs; (4) approves General Release Payments of $5,000.00 each to Named Plaintiff Mike Pieczynski and Opt-in Plaintiff Megan Lindahl and $2,500.00 to Opt-in Plaintiff Catherine Nolte; (5) approves Simpluris as the Settlement Administrator; (6) dismisses this lawsuit with prejudice (7) retains jurisdiction to enforce the settlement; (8) closes this case and denying all pending motions as moot; and (9) grants any other further relief that this Court deems just and proper.

Dated:          March 17, 2022
                Boca Raton, FL          Respectfully submitted,

                                        By: s/ Logan A. Pardell
                                        Logan A. Pardell
                                        lpardell@shavitzlaw.com
                                        Gregg I. Shavitz
                                        gshavitz@shavitzlaw.com
                                        Paolo C. Meireles
                                        pmeireles@shavitzlaw.com
                                        SHAVITZ LAW GROUP, P.A.
                                        951 Yamato Road, Suite 285
                                        Boca Raton, FL 33431
                                        Telephone: (561) 447-8888
                                        Fax: (561) 447-8831

Attorneys for Plaintiff and the Putative
FLSA Collective

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2022, I electronically filed the
foregoing document with the Clerk of Court using CM/ECF.

/s/ Logan A. Pardell
Logan A. Pardell, Esq.

## <u>SERVICE LIST</u>

Luis A. Santos
Florida Bar No. 84647
lsantos@fordharrison.com
David Kalteux
Florida Bar No. 118746
dkalteux@fordharrison.com
101 E. Kennedy Boulevard
Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899
Attorneys for Defendant