**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| **MIKE PIECZYNSKI,** Individually and On Behalf of Himself and All Others Similarly Situated, | : : : : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 6:20-cv-01457-CEM-DCI |
| vs. | : : | |
| **LCA-VISION INC. d/b/a LASIKPLUS,** | : : | |
| | : | |
| Defendant. | : | |

**SETTLEMENT AGREEMENT**

The Parties to this Civil Action, acting through their representatives and attorneys, enter into this Agreement concerning the amicable resolution of this Civil Action, subject to approval by the Court.

1. **DEFINITIONS**

The terms set forth below shall have the meanings defined herein wherever used in this Agreement (including its exhibits).

**1.1** "Agreement" means this written Settlement Agreement, which sets forth the terms of the settlement and final amicable resolution of this Civil Action.

**1.2** "Approval Order" means the order to be entered by the Court: (a) approving the terms of this Agreement (subject to any modification that is acceptable

to the Parties); and (b) approving the settlement and release of claims by Plaintiffs and the other Putative Collective Members, as set forth herein. The proposed Approval Order, which will be submitted to the Court with Plaintiffs' unopposed motion, is attached as **Exhibit A.**

1.3    "Civil Action" means the above-captioned action, inclusive of the claims asserted therein pursuant to the federal Fair Labor Standards Act ("FLSA").

1.4    "Court" means the United States District Court for the Middle District of Florida.

1.5    "Class Counsel" means Gregg I. Shavitz, Paolo C. Meireles, and Logan A. Pardell, of the law firm SHAVITZ LAW GROUP, P.A.

1.6    "Days" shall mean calendar days unless otherwise stated.

1.7    "Defendant" means LCA-Vision, Inc. d/b/a LasikPlus.

1.8    "Defense Counsel" means Luis A. Santos and David M. Kalteux of the law firm FORDHARRISON LLP.

1.9    "Effective Date" means the date upon which all of the following have occurred in the Civil Action: (a) entry of the Approval Order; (b) issuance of an order dismissing the Civil Action with prejudice and entering judgment in accordance with the terms of this Agreement (subject to any modification that is acceptable to the Parties); and (c) the expiration of the appeal rights of the Parties and Putative Collective Members (which shall be deemed to be 31 days following

entry of the order dismissing the Civil Action with prejudice and entering judgment in accordance with the terms of this Agreement, or if a timely notice of appeal is filed, shall be deemed to be 5 days following the expiration of all such appeals and related proceedings without any material alteration of the terms of the Approval Order).

1.10   "FLSA Collective Representative" means Named Plaintiff.

1.11   "Named Plaintiff" means Mike Pieczynski.

1.12   "Parties" means Plaintiffs, including Named Plaintiff in his own capacity as well as in their capacity as FLSA Collective Representative (on behalf of himself and all Putative Collective Members) and Defendant.

1.13   "Plaintiffs" means Named Plaintiff, Megan Lindal and Catherine Nolte.

1.14   "Putative Collective Members" means Plaintiffs and overtime exempt-classified Center Directors, Center Managers and Center Leaders, however variously titled (collectively, "CDs"), employed Defendant anywhere in the United States who worked during the Relevant Period.

1.15   "Released Parties" means: Defendant and its predecessors, successors, present and former affiliates, parents, subsidiaries, insurers, officers, directors, agents, members, shareholders, unitholders, general partners, limited partners, owners, beneficiaries, representatives, heirs, attorneys, assigns (including without limitation, any investors, trusts, or other similar or affiliated entities) of, and all

3

persons acting by, through, under or in concert with, any of the entities identified in this section, including any person or entity that was or could have been named as a defendant in the Civil Action.

**1.16** "Relevant Period" means weeks worked by Plaintiffs and Putative Collective Members as CDs at any time from the longer of (i) three years prior to the filing of their consent to join forms in this case; and (ii) November 18, 2018 through February 8, 2022.

**1.17** "Settlement Administrator" means Simpluris.

**1.18** "Settlement Administrative Costs" means the fees and costs of the Settlement Administrator for the administrative services it will provide and its expenses in connection with those services under this Agreement. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the settlement.

**1.19** "Total Settlement Amount" covers and includes all state and federal overtime claims Plaintiffs and Putative Collective Members; general release payments; and Plaintiffs' Counsel's attorneys' fees and costs, which includes the expenses of the settlement administrator. The Total Settlement Amount is $215,000.00, assuming the number of workweeks at issue is not more than 3%

greater than 3,253, which is based on the data provided by Defendant pre-mediation.[1]
The Total Settlement Amount is inclusive of the Plaintiffs' Fund and the Attorneys'
Fees and Costs Fund, as addressed further herein.

      a)    "Plaintiffs' Fund" means the maximum of $110,000.00 to be
paid by Defendant to Putative Collective Members for their individual settlement
payments, unless otherwise indicated herein.   Court-approved General Release
Payments shall be deducted from the Plaintiffs' Fund, with the remainder to be
allocated among the Putative Collective Members in accordance with Section 3.4,
below.  Employer's share of payroll taxes shall be paid in addition to the Plaintiffs'
Fund.

      b)    "General Release Payments" means the maximum of up to
$12,500.00 total allocated to the Plaintiffs from the Plaintiffs' Fund.  Specifically, a
total of $5,000.00 each shall be allocated to Named Plaintiff and Megan Lindahl,
and a total of $2,500.00 shall be allocated to Catherine Nolte, subject to Court
approval, in exchange and as specific consideration for a general release of all claims
they have or may have against Defendant that accrued through the date of the
execution of this Agreement, as described in more detail in Section 5.2, *infra*.

---

[1]    In the unlikely event that the number of workweeks at issue is more than 3% greater than
3,253 (meaning greater than 3,351 workweeks), the Plaintiffs' Fund will be increased
proportionally to account for all additional such weeks (without any additional attorneys' fees or
costs owed by Defendant)

Defendant will not oppose these requests. Any order not approving the General Release Payments shall not operate to terminate or cancel this Agreement.

c)      The "Attorneys' Fees and Costs Fund"  means a separately negotiated amount of up to $105,000.00 to compensate Plaintiffs' Counsel for their fees and costs, inclusive of Settlement Administrative Costs.  Defendant will not oppose this request.  The Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' petition for fees and costs.  Unapproved amounts from the Attorneys' Fees and Costs Fund shall be kept to Defendant.

## 2.   RECITALS

2.1.    Named Plaintiff brought this Civil Action under the FLSA on behalf of individuals who were employed by Defendant as CDs. Plaintiffs assert that they and Putative Collective Members worked in excess of 40 hours per week during their employment as CDs and that Defendant was required to pay them at an overtime rate for all hours worked in excess of 40 hours per week. Named Plaintiff seeks compensation for unpaid overtime wages, as well as other relief under the FLSA, including liquidated damages, interest, litigation costs and expenses, and attorney's fees.

2.2.    Defendant denies the allegations in the Civil Action and states that it did not violate the law and that it has no liability for any claims asserted in the Civil Action.  Defendant contends that Plaintiffs and Putative Collective Members were

properly classified as employees exempt from the overtime protections of the FLSA, and thus were fairly and adequately compensated for the work they performed. Nonetheless, Defendant has agreed to the terms of this Agreement because it will: (1) avoid the further expenses and disruption of business due to the pendency and expense of the litigation; and (2) put the claims asserted in the Civil Action to rest.

2.3.    This Agreement reflects a compromise of disputed claims. Nothing in this Agreement shall be deemed or used as evidence of, or as an admission of, liability by Defendant or any of the Released Parties, or of any fault or wrongdoing whatsoever, or as evidence that, or as an admission that, this action may proceed as a collective action under the FLSA for any purpose other than settlement.

2.4.    It is the desire of Plaintiffs to fully, finally, and forever settle, compromise, and discharge all claims that were asserted or that could have been asserted in the Civil Action related to the payment of overtime wages, including but not limited to all claims, demands, and causes of action for unpaid overtime wages, penalties, liquidated damages, interest, costs, attorney's fees, and any other relief under the FLSA, 29 U.S.C. §§ 201, *et seq.*, as well as any similar state or local law governing the payment of overtime wages, arising out of work performed for Defendant as an overtime exempt-classified CD during the Relevant Period.

2.5.    It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims as defined in Section 5.1 herein against all Released Parties.

2.6.    In exchange for (a) the dismissal of Civil Action with prejudice; (b) the settlement and release of all Released Claims as defined in Section 5.1 herein against all Released Parties; and (c) otherwise subject and pursuant to the terms and conditions of this Agreement, Defendant has agreed to pay up to an amount not to exceed the Total Settlement Amount, except to the extent otherwise noted herein.

2.7.    The Parties shall cooperate in the formal steps necessary to carry out the terms set forth in this Agreement, which is subject to approval by the Court.

3.    **APPROVAL AND NOTICE PROCEDURES**

3.1    The Parties shall seek Court approval of this Agreement. The Parties agree that Plaintiffs will file with the Court an unopposed motion for entry of the Approval Order as an Order of Court by the deadline set by the Court. The motion shall be prepared and filed by Class Counsel.

3.2    The motion shall also seek a maximum of up to $105,000.00 to be paid to Class Counsel in accordance with the Approval Order, as an amount for separately-negotiated attorney's fees, costs and expenses incurred in the Civil Action (the "Attorneys' Fees and Costs Fund"). The Attorneys' Fees and Costs Fund will account for an award of attorney's fees of up to $95,782.00 and an award of costs

and expenses of up to $9,218.00, both based on actual fees and costs incurred to date as well as anticipated Settlement Administrative Costs.[2]  Defendant will not oppose this request.  If the Court awards less than $105,000.00 as the total Attorneys' Fees and Costs Fund, this shall not provide a basis for voiding this Agreement, or objecting to or appealing from the Approval Order.  Amounts not approved by the Court will remain with and be retained by Defendant.

### 3.3   Notice and Claims Procedure for Putative Collective Members.

a)      Not later than ten (10) days after the date the Court enters the Approval Order as an Order of Court, Defendant will provide the Settlement Administrator and Class Counsel with an Excel chart listing for each Putative Collective Member, their: (1) name; (2) dates of employment as an exempt-classified CD; (3) state(s) of employment as an overtime exempt-classified CD; (4) last known address; (5) last known personal e-mail address (or corporate e-mail, to the extent a personal e-mail is not available); and (6) social security number.

b)      Within twenty-one (21) days after the Effective Date, the Settlement Administrator shall mail, via First Class United States mail, the Notice of Settlement of Collective Action Lawsuit ("Notice") in the form attached as **Exhibit B** reflecting the recipient's share of the Plaintiffs' Fund and an enclosed

---

[2]      The Attorneys' Fees and Costs Fund does not include the mediator's fee, which Defendant shall pay in full beyond and in addition to the Total Settlement Amount.

settlement check with a Consent to Join Form and release[3] (collectively, "Notice Packet") to all Putative Collective Members using each individual's last known address (except that the Settlement Administrator shall perform a national change of address database review prior to mailing). If a Notice Packet is returned to the Settlement Administrator with a forwarding address, the Notice Packet shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail to the address indicated. If a Notice Packet is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts (such as skip traces) to search for the correct address, and shall promptly re-mail the Notice Packet to any newly found address(es). At the same time that Notice Packets are initially issued via First Class United States mail, the Settlement Administrator shall e-mail the Notice to all Putative Collective Members, with the clarification that the recipient's Consent to Join Form has been issued via First Class United States mail.

   3.4   **Allocation of the Plaintiffs' Fund.**

         a)    Net Fund. The amount approved by the Court for the General Release Payments shall be deducted from the Plaintiffs' Fund to obtain a "Net Fund."

---

[3]      The Consent to Join Form and release shall be printed on the back of the Settlement Check as described in more detail, *infra*.

**b)**   Each Putative Collective Member shall be allocated settlement payments shall be allocated a portion of the Net Fund pursuant to the following allocation formula:

> **i)** Each Plaintiff and Putative Collective Member employed by Defendant anywhere in the United States shall be compensated on a *pro rata* basis, based on each week worked as an exempt-classified CD during the Relevant Period.
>
> **ii)** The calculation of all workweeks pursuant to paragraphs (i) above shall be based on Defendant's business records.
>
> **iii)** To calculate each Plaintiff's and Putative Collective Member's proportionate share:
>
>> **1.** Add all eligible workweeks for each Plaintiff and Putative Collective Member together to obtain the "Total Denominator";
>>
>> **2.** Divide the number of eligible workweeks for each Plaintiff and Putative Collective Member by the Total Denominator to obtain each Plaintiff's and Putative Collective Member's "Portion of the Net Fund."
>
> **iv)** Multiply each Plaintiff's and Putative Collective Member's Portion of the Net Fund by the Net Fund to determine each

Plaintiff's and Putative Collective Member's "Gross Individual Settlement Payment." The final sum of the Gross Individual Settlement Payments for Plaintiffs and Putative Collective Members shall equal the Net Fund. The Gross Individual Settlement Payment shall be disclosed in the respective Plaintiff's and Putative Collective Member's Notice. A Gross Individual Settlement Payment will be paid to each Plaintiff and Putative Collective Member, with appropriate taxes withheld as further described herein, via a Settlement Check.

## 4.   **PAYMENT OBLIGATIONS**

**4.1**   Within fourteen (14) days after receiving Excel spreadsheets contemplated in Section 3.3(a) above, the Settlement Administrator will provide the Parties with a register of all Plaintiffs and Putative Collective Members, the total amount to be paid to them under the terms of the Agreement, the total amount necessary to satisfy all individual payments to the Putative Collective Members, the total amounts necessary to pay the approved Attorneys' Fees and Costs Fund, the total amount necessary to pay the employer's share of payroll taxes arising out of the individual payments to Putative Collective Members (to be paid by Defendant in

addition to the Total Settlement Amount, as described further *infra*), and the total Settlement Administrative Costs.

4.2    No later than seven (7) days after the Effective Date, Defendant shall remit to the Settlement Administrator the total amount of funds required to satisfy its obligations under this Agreement, as advised by the Settlement Administrator in accordance with Section 4.1 above.  Payment will be by wire transfer to a Qualified Settlement Fund established by the Settlement Administrator with a depository bank chosen by the Settlement Administrator.

a)    The Qualified Settlement Fund is intended by the Parties to be a qualified settlement fund as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*  The account shall be established as a qualified settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

4.3    Within fourteen (14) days after the Effective Date, the Settlement Administrator shall distribute the approved Attorneys' Fees and Costs Fund to Class Counsel via wire transfer; and the approved General Release Payments via First Class United States mail, according to the amounts due and owing to each of them pursuant to the terms of the Approval Order and this Agreement.

13

**4.4**    For income and payroll tax purposes, fifty percent (50%) of the Court-approved individual shares of the Plaintiffs' Fund shall be treated as wages (and subject to required withholdings and deductions and reported as wage income), and the remaining fifty percent (50%) of each such adjusted payment, as well as one-hundred percent (100%) of each payment made in satisfaction of the Court-approved General Release Payments, shall be treated as liquidated damages, interest and other non-wage recovery (and shall not be subject to withholdings or deductions and shall be reported as non-wage other income in Box 3 of a Form 1099-MISC).

**4.5**    Other than the withholding and reporting requirements herein, the Putative Collective Members shall be solely responsible for their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement. All applicable employer payroll tax amounts associated with the payments described in this Agreement to Plaintiffs and the Putative Collective Members, including the employer share of FICA, FUTA, and SUTA/SUI, shall be paid by Defendant in addition to the Total Settlement Amount, and Defendant shall bear all responsibility with respect to the employer's share of payroll taxes. The Settlement Administrator shall be responsible for calculating and remitting to the tax authorities all payroll taxes, as well as the employer share of FICA, FUTA, and SUTA/SUI, for payments out of these allocations.

**4.6**    The Putative Collective Members will have one hundred twenty (120) days from the date the Notice Packet is issued ("Original Mailing Date") to submit their Consent to Join Form and acknowledge and assent to join the Civil Action as an Opt-in Plaintiff by cashing or otherwise negotiating their Settlement Check enclosed in their Notice Pack ("Original Claims Deadline"). To the extent any mailed Notice Packet is returned as undeliverable, such person shall be permitted the longer of sixty (60) days from any re-mailing or the Original Claims Deadline to submit their Consent to Join Form ("Remail Claims Deadline")[4]. Sixty (60) days after the Original Mailing Date, the Settlement Administrator will send a reminder notice via e-mail. After the Claims Deadline, the Settlement Administrator shall stop payments on any checks issued to Putative Collective Members that have not been negotiated. Only those Putative Collective Members who opt into the settlement by returning a Consent to Join Form, shall become Opt-in Plaintiffs and be bound by the terms of this Agreement.

**4.7**    Any portion of the Plaintiffs' Fund not distributed as per the terms hereof shall revert to Defendant, to the extent permitted by the Court. If reversion is not permitted by the Court, any unclaimed funds (i.e. funds allocated to Putative Collective Members who did not complete Consent to Join Forms) shall be

---

[4]    The later of the Original Claims Deadline and the Remail Claims Deadline shall be the "Claims Deadline."

transferred to Florida Legal Services as the *cy pres* recipient, or some other entity as *cy pres* recipient as approved by the Court. The transfer of any unclaimed portion of the Plaintiffs' Fund shall occur within thirty (30) days of the Claims Deadline.

    **4.8**    Payments made under this Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlements under; (2) count as earnings or compensation with respect to; or (3) be considered to apply to, or be applied for purposes of, any bonus, pension, any 401(k) and/or other retirement plans or similar programs of any of the Released Parties.

## 5.    RELEASES

### 5.1    Release of Claims by Named Plaintiffs and all Putative Collective Members.

    **a)**    By operation of this Agreement and the Approval Order, and except as to such rights or claims as may be created by this Agreement or those non-waivable by law, upon the depositing or otherwise negotiating their Settlement Check, each Plaintiff and all Putative Collective Member shall hereby irrevocably and unconditionally forever and fully release and covenant not to sue or otherwise pursue claims against Defendant and all Released Parties from any and all claims that were asserted or that could have been asserted in this Civil Action related to the payment of overtime wages, including but not limited to all claims, demands, and causes of action for unpaid overtime wages, penalties, liquidated damages, interest,

16

costs, attorney's fees, and any other relief under the federal FLSA, 29 U.S.C. §§ 201, *et seq.*, as well as any similar state or local law governing the payment of overtime wages, arising out of work performed for Defendant as an overtime exempt-classified CD at any time during the Relevant Period (collectively, the "Released Claims").

> **i)** All Settlement Checks shall contain, on the back of the check, the following "Consent to Join and Release of Claims" endorsement:

**CONSENT TO JOIN AND RELEASE OF CLAIMS:**

By depositing and/or otherwise negotiating this check, I consent to join and become an "Opt-in Plaintiff" in the collective action lawsuit entitled *Pieczynski v. LCA-Vision, Inc. d/b/a LasikPlus*, Case No. 6:20-cv-01457 (M.D. Fla.) ("Civil Action"), pending in the United States District Court for the Middle District of Florida, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

Except as to such rights or claims as may be created by the Settlement Agreement or those non-waivable by law, I shall hereby irrevocably and unconditionally forever and fully release and covenant not to sue or otherwise pursue claims against Defendant, LCA-Vision, Inc. d/b/a LasikPlus ("Defendant") and all Released Parties, as defined in the Settlement Agreement, from any and all claims that were asserted or that could have been asserted in the Civil Action related to the payment of overtime wages, including but not limited to all claims, demands, and causes of action for unpaid overtime wages, penalties, liquidated damages, interest, costs, attorney's fees, and any other relief under the federal FLSA, 29 U.S.C. §§ 201, *et seq.*, as well as any similar state or local law governing the payment of overtime wages, arising out of work performed for Defendant as an overtime exempt-classified CD at any time until and including February 8, 2022 (collectively, the "Released Claims").

b)      Named Plaintiff, as the FLSA Collective Representative, on behalf of himself, the other Plaintiffs and all Putative Collective Members, represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any of the Released Claims or any portion thereof or interest therein, including but not limited to, any interest in the Civil Action, or any related action.

### 5.2    Provisions Applicable to Plaintiffs.

In addition to the claims released as set forth in Section 5.1 above, Plaintiffs shall execute the General Release of Claims attached hereto as **Exhibit C**.

## 6.    PARTIES' AUTHORITY

**6.1**    All Parties have been represented by counsel throughout all negotiations which preceded the execution of this Agreement and this Agreement is made with the consent and advice of counsel. Class Counsel represent that the terms and conditions of this settlement are fair, reasonable, adequate, beneficial to and in the best interest of Plaintiffs and the Putative Collective Members. Named Plaintiff, as the FLSA Collective Representative, and Class Counsel represent that they are fully authorized to enter into this Agreement and to bind the Putative Collective Members to the terms and conditions thereof.

**6.2**    All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the

execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

6.3     The Agreement will be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## 7.     ADDITIONAL PROVISIONS

7.1     The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement in a reasonable, practicable, and expeditious manner, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

7.3     Unless otherwise specifically provided herein, all notice, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Plaintiffs/Putative Collective Members:

>       Gregg I. Shavitz
>       SHAVITZ LAW GROUP, P.A.
>       951 Yamato Rd, Suite 285
>       Boca Raton, FL 33431

To Defendant:

>       Luis A. Santos

FORDHARRISON LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 33602

7.4     To be effective, any amendment to the Agreement must be made in writing and signed by counsel for the Parties and approved by the Court.

7.5     This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between the Agreement and any other document, the Parties intend that this Agreement shall be controlling.

7.6     If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Parties remain materially the same.

7.7     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Florida, both in its procedural and substantive aspects, and shall be subject to the continuing exclusive jurisdiction of the Court to interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this

Agreement or the issues of law and facts asserted in the Civil Action. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

7.8     This Agreement may be executed in counterparts, including by electronic means, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

7.9     The Named Plaintiff, Class Counsel, and Defense Counsel agree not to encourage Putative Collective Members to execute their Consent to Join Forms. Defendant may communicate about the Agreement with their current employees who are Putative Collective Members for the exclusive purpose of notifying them about the Agreement and instructing them how to join the Civil Action as Opt-in Plaintiffs. Defendant will not take any adverse action against any current employees who are Putative Collective Members because of their decision to execute their Consent to Join Forms and deposit or otherwise negotiate their Settlement Checks.

7.10    Except as otherwise specifically provided herein, the Parties shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise,

incurred by them or arising out of or related to this Civil Action, including pre-litigation costs, fees and expenses, and shall not seek reimbursement thereof from any party to this Agreement. However, in the event of any dispute to enforce the terms of this Agreement by any of the Parties, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party. Additionally, to the extent Defendant fails to timely pay all sums due by virtue of this Agreement, after providing notice of default and expiration of a 7-day cure period, Plaintiffs shall be entitled to the immediate entry of a Final Judgment sufficient to permit collection of all outstanding sums owed.

7.11 If the Court declines to enter, in the form submitted by the Parties as contemplated under this Agreement (or any amended version agreed upon by the Parties), the Approval Order, or if the settlement as agreed does not become final for any other reason, the Parties agree to meet and confer in an attempt to address the Court's concerns that precluded approval, and if feasible, to resubmit the settlement for approval within thirty (30) days. If the Parties are unsuccessful, then there shall be no prejudice due to lapse of time to either side and the Parties may proceed with litigation as it existed on the date of the execution of this Agreement. If this Agreement is not approved, the case will proceed as if no settlement had been attempted, the claims of all Putative Collective Members shall be tolled as of February 8, 2022, and Defendant retains the right to contest whether this case should

be maintained as a collective action and to contest the merits of any claims being asserted in the Civil Action.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated:   03/10/2022

                     Mike Pieczynski
                     Named Plaintiff

Dated: **3/15/2022**     LCA-VISION, INC. D/B/A LASIKPLUS

By: _____

Its: Principal

23

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| **MIKE PIECZYNSKI,** Individually and On Behalf of Himself and All Others Similarly Situated, | : : : : | |
| | : | |
| Plaintiff, | : | |
| | : : | Case No. 6:20-cv-01457-CEM-DCI |
| vs. | : | |
| | : | |
| **LCA-VISION INC. d/b/a LASIKPLUS,** | : : : | |
| | : | |
| Defendant. | : | |
| | : | |

**[PROPOSED] ORDER GRANTING APPROVAL OF SETTLEMENT**

THIS MATTER came before the Court upon Plaintiffs' Unopposed Motion for Order Approving Settlement of Collective Action (the "Motion"). Having reviewed the Motion and the Settlement Agreement and Exhibits attached thereto, and the Court being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** as follows:

The Motion is **GRANTED**. The Court finds that the Parties' Settlement is fair, reasonable and just in all respects, and reflects a reasonable compromise

over contested litigation to resolve a bona fide dispute under the Fair Labor
Standards Act. Accordingly:

1.      The Parties' Settlement is APPROVED in its entirety;

2.      The Court approves the proposed Settlement Notice attached as
Exhibit B to the Settlement Agreement and the proposed
distribution method;

3.      The Court approves the award of the Attorneys' Fees and Costs
Fund of $105,000.00 to compensate Plaintiffs' Counsel for their
attorneys' fees, out-of-pocket expenses and the anticipated
Settlement Administrative Costs.

4.      The Court approves General Release Payments of $5,000.00 each
to Named Plaintiff Mike Pieczynski and Opt-in Plaintiff Megan
Lindahl and $2,500.00 to Opt-in Plaintiff Catherine Nolte;

5.      Simpluris is approved as the Settlement Claims Administrator.

6.      This Action is DISMISSED WITH PREJUDICE;

7.      This Court will RETAIN JURISDICTION to enforce the
Settlement; and

8.      The case is closed and all pending motions are denied as moot.

DONE and ORDERED in Orlando, Florida, this _____ day of

_____, 2022.

_____
Carlos E. Mendoza
United States District Judge

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

```
------------------------------------------------------------X
MIKE PIECZYNSKI, Individually and On          :
Behalf of All Others Similarly Situated,      :
                                              :   Case No. 6:20-cv-01457-CEM-DCI
                      Plaintiff,              :
          -against-                           :
                                              :
LCA VISION, INC. d/b/a LASIKPLUS,             :
                                              :
                      Defendant.              :
------------------------------------------------------------X
```

## <u>COURT-AUTHORIZED NOTICE OF</u>
## <u>FLSA COLLECTIVE ACTION SETTLEMENT</u>

**If you were employed as a salary-paid Center Director, Center Manager, Center Leader, or similarly titled position (collectively, "CD") at LasikPlus between November 18, 2018 through February 8, 2022, you are entitled to opt-in to join this lawsuit and receive settlement proceeds.  A Consent to Join Form is printed on a Settlement Check which is enclosed with this Notice of Settlement.**

- Plaintiff Mike Pieczynski ("Plaintiff") sued LCA-Vision, Inc., d/b/a LasikPlus, ("Lasik*Plus*"), claiming that he and other CDs are owed overtime pay under the Fair Labor Standards Act ("FLSA") for hours they worked over 40 in a workweek. Plaintiff alleges that he and other CDs were misclassified as exempt employees, and thus entitled to overtime pay for all hours worked over 40 in workweek.

- Lasik*Plus* denies Plaintiff's claims that it violated the law, and denies that it misclassified CDs as exempt employees.

- Although it denies the allegations, Lasik*Plus* has agreed to a settlement on behalf of all CDs who worked for Lasik*Plus* between November 18, 2018 through February 8, 2022 ("Relevant Period").

- Under the allocation formula created by the settlement, you are entitled to a gross (i.e., pre-tax) settlement payment of $<<SETTLEMENT AWARD>>.  This amount is based on the number of weeks in which you worked as an exempt (i.e., salary paid) CD during the Relevant Period.

1

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT** | By signing the Consent to Join and Release on the back of the enclosed Settlement Check and/or depositing/cashing the Settlement Check, you agree to (i) join this lawsuit as an "Opt-in Plaintiff," (ii) participate in the settlement, (iii) collect your monetary settlement payment, and (iv) release your overtime claims (as detailed in Section 5 below). You further represent and warrant that you have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the this lawsuit, or any related action. |
| **DO NOT PARTICIPATE IN THE SETTLEMENT** | By doing nothing, you will NOT be included in this lawsuit. This means that you will not be bound by any judgment and will not be eligible to participate in any monetary settlement or recovery of Plaintiff's FLSA claims. However, you keep any rights to sue Lasik*Plus* separately about the same legal claims in this lawsuit. You should be aware that your time to bring FLSA claims is limited by either a two- or three-year statute of limitations. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

# BASIC INFORMATION

### 1. What is a collective action?

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims. The other CDs who have similar claims who opt into the Collective Action will become "Collective Members." You may opt into the Collective Action and participate in the settlement of the lawsuit by signing/endorsing the Settlement Check, and/or depositing/cashing it, which operates as a submission of your Consent to Join and Release.

# BENEFITS – WHAT YOU GET

### 2. What does the settlement provide?

LasikPlus has agreed to pay up to $110,000.00 into a fund to pay Putative Collective Members' settlement payments, Court-approved General Release Payments of $_____ total to the Named Plaintiff and two other CDs who originally retained Plaintiffs' Counsel to pursue these claims on behalf of all CDs in exchange for a general release of their claims, and payroll and other applicable taxes (except for the employer's share of payroll taxes) ("Plaintiffs' Fund").

After deducting the Court-approved General Release Payments and payroll and other applicable taxes (except for the employer's share of payroll taxes), the remaining amount is divided among

current and former CDs who are covered by the Settlement Agreement, based on the number of weeks they worked in the covered position during the periods covered by the settlement. **Settlement Checks which are not deposited/cashed within 120 days of issuance will be null and void.**  Your deadline to deposit/cash your Settlement Check is **[120 days after Notice Mailing]**.

### 3. How much will my payment be and how was it calculated?

Based on the formula that has been approved by the Court, in exchange for properly executing and timely returning your Consent to Join and Release Form, you are receiving $<<SETTLEMENT AWARD>> half of which is subject to deductions for applicable wage taxes and withholdings like any other paycheck, and for which you will receive a W-2; and half of which will be reported on an IRS Form 1099.

The settlement allocation formula takes into account the number of weeks you worked as a CD during the Relevant Period according to Lasik*Plus*' records.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Section 8, below.

## HOW YOU CAN GET MORE INFORMATION

### 4. What if I have questions about the settlement?

If you are receiving this Notice, you are already eligible to participate in the Settlement.  You need only sign the Consent to Join and Release form on the back of your enclosed Settlement Check and/or otherwise deposit/cash the Settlement Check before the [**120 days after Notice Mailing**]. However, if you have any questions, you can contact the Claims Administrator at:

Lasik*Plus* Center Director Settlement Claims Administrator
[address]
[city state zip]
Phone: (___) ___-____
Facsimile (___) ___-____
E-mail: _____

You may also contact Plaintiffs' Counsel at the contact information listed in Section 6, below.

### 5. What am I giving up to get a payment and join the Collective?

You will not become a Collective Member and participate in the settlement of this lawsuit unless you sign the Consent to Join and Release printed on the back of your enclosed Settlement Check and/or deposit/cash the Settlement Check by the deadline.  Once you become a Collective Member, you cannot sue, continue to sue, or be a party in any other legal action against Lasik*Plus* about any of the claims you are releasing which relate to your employment as a CD with Lasik*Plus* during the Relevant Period.  A full copy of the release printed is on the Settlement Check.

**6. Do I have a lawyer in this case?**

The Court has decided that the lawyers at the law firm of the Shavitz Law Group, P.A. are qualified to represent you and all Putative Collective Members.  These lawyers are called "Plaintiffs' Counsel."  You will not be charged for these lawyers.  You can find more information about Plaintiffs' Counsel at: www.shavitzlaw.com.

Otherwise, if you have any questions, you may contact Plaintiffs' Counsel at:

Gregg I. Shavitz
Paolo C. Meireles
Logan A. Pardell
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
SLG@shavitzlaw.com
www.shavitzlaw.com

You do not need to retain your own attorney in order to participate in the settlement.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**7. How will the lawyers be paid?**

The Court has approved a separate payment of $_____ to compensate Plaintiffs' Counsel for their attorneys' fees and costs incurred in this case as well as the costs of the Settlement Claims Administrator ("Attorneys' Fees and Costs Fund").  Specifically, the Court has approved, $_____ in attorneys' fees, $_____ in out-of-pocket costs and as well as additional costs of the third-party Settlement Claims Administrator.

## GETTING MORE INFORMATION

**8. Are there more details about the settlement?**

This Notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  If there is any discrepancy between this Notice and the Settlement Agreement, the terms of the Settlement Agreement will control.  You can obtain a copy of the Settlement Agreement by sending a request in writing, to the Settlement Claims Administrator at the contact information listed in Section 4, above.  Alternatively, you can contact Shavitz Law Group, P.A., at the contact information listed at Section 6, above.

DATED: _____, 2022

# EXHIBIT C

## GENERAL RELEASE IN EXCHANGE FOR GENERAL RELEASE PAYMENT
### ("General Release")

[Plaintiff's full name], on behalf of himself or herself and his or her heirs, representatives, successors, and assigns (collectively, "EMPLOYEE"),  LCA-Vision, Inc., d/b/a LasikPlus, ("LasikPlus"), together with EMPLOYEE, the "Parties"), for good and valuable consideration, the receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully, and completely all matters or disputes that now or may exist between them, including the proceeding before the United States District Court for the Middle District of Florida titled *Pieczynski v. LCA Vision, Inc., d/b/a LasikPlus*, Case No. 6:20-cv-01457-CEM-DCI (the "Litigation"), hereby agree as follows:

1. **Consideration.**  EMPLOYEE understands and agrees that by signing and returning this General Release and, contingent upon the Court's approval of the Settlement Agreement filed in the Litigation ("Settlement Agreement"), and the Court's approval of a General Release Payment (as defined in the Settlement Agreement), EMPLOYEE will be eligible to receive a General Release Payment of $XXXX, or such other amount as approved by the Court, consistent with the provisions of Section 1.19 (b) of the Settlement Agreement, as well as a Gross Individual Settlement Payment as may be applicable (as discussed in the Settlement Agreement) consistent with the Settlement Agreement.  The General Release Payment shall be deemed non-wage compensation and reported to EMPLOYEE on IRS Form 1099.

2. **Release and Waiver of Rights and Claims.**  In exchange for the General Release Payment, and to the full extent permitted by law, EMPLOYEE voluntarily, completely, and irrevocably releases, acquits, and forever discharges LasikPlus, and its current or former owners, officials, directors, officers, shareholders, affiliates, subsidiaries, agents, employee benefit plans, plan administrators, representatives, servants, employees, former employees, attorneys, parents, divisions, branches, units, successors, predecessors, and assigns (collectively, "RELEASED PARTIES"), from any and all claims, whether in law or in equity, which EMPLOYEE asserts or could asserts, whether known or unknown, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, claims under the Age Discrimination in Employment Act (the "ADEA"), Title VII of the Civil Rights Act of 1964, the federal Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993 (the "FMLA"), the Employee Retirement Income Security Act of 1974, the Racketeer Influenced and Corrupt Organizations Act, the Financial Reform Recovery and Enforcement Act of 1989, Section 1981 of Title 42 of the United States Code, the federal Worker Adjustment and Retraining Notification (WARN) Act, any other federal, state, or city laws concerning workplace rights or obligations or payment of wages, claims for violation of privacy rights, claims for violation of civil rights, claims for denial of equal rights, discrimination, wrongful termination, retaliation, breach of contract, equitable remedies, interference with advantageous relations, all tort claims, and all claims that were or could have been raised by EMPLOYEE in the Litigation, or which arose prior to the date the EMPLOYEE signs this General Release, against the RELEASED PARTIES with respect to any event, matter, claim, damage or injury arising out of EMPLOYEE's employment with LasikPlus, the termination of such employment, any application for employment with  LasikPlus, and/or EMPLOYEE's eligibility for employment with the RELEASED PARTIES, and/or with

1

respect to any other claim, matter, or event arising prior to execution of this General Release by EMPLOYEE.

3. **Release Exclusions.**  Excluded from the release in Section 2 above are any claims arising after execution of this General Release, and any claims this General Release cannot waive such as for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; any existing rights of defense and indemnity or liability insurance coverage; and the right to enforce this General Release.  Nothing in this Agreement limits EMPLOYEE's right to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the EEOC, SEC or OSHA under any law protecting such rights.  But EMPLOYEE does give up, however, any money or other personal benefit he or she might receive from LasikPlus (not a government agency) for any such claim or litigation, unless prohibited by law.

4. **Non-Disparagement**.  EMPLOYEE agrees that EMPLOYEE will not make any statement, written or oral, or take any action that is disparaging about, or that could reasonably be construed to harm the goodwill or business or personal reputations of LasikPlus.  Nothing in this Section shall be interpreted to affect EMPLOYEE's obligation to testify truthfully in any judicial or other legal proceedings in which EMPLOYEE is required to appear as a witness. LasikPlus agrees to instruct EMPLOYEE's direct managers, to the extent they are currently employed by LasikPlus, not to make any statements, either verbal or written, including without limitation to any electronic or print news media or other publications, or any community organizations, that would disparage EMPLOYEE's reputation, image, goodwill or commercial interest.

5. **Response to Inquiries on Employment.** If a prospective employer or other third party seeks to contact LasikPlus for a reference for EMPLOYEE, LasikPlus will provide a neutral reference and provide only the dates of employment and position(s) held by the EMPLOYEE subject to a request for a reference.  EMPLOYEE should direct such inquiries to the LasikPlus's Human Resources Department, at hr@lasik.com.

6. **Other Agreements.**  EMPLOYEE also understands and agrees as follows:

(a)    EMPLOYEE is entering into this General Release, intending to be bound by its terms, knowingly, voluntarily, and with full knowledge of their significance.  EMPLOYEE has not been coerced, threatened, or intimidated into signing this General Release;

(b)    EMPLOYEE acknowledges that, other than the allegations asserted in the Litigation, EMPLOYEE is not aware of any illegal of tortious conduct by LasikPlus.

(c)    EMPLOYEE has been advised to consult with a lawyer prior to signing this General Release and agreeing to be bound by its terms and has, in fact, consulted with counsel with the Shavitz Law Group, P.A.;

(d)    EMPLOYEE has been given a reasonable amount of time to consider this General Release;

(e)    EMPLOYEE is not otherwise entitled to the consideration described in this General Release;

2

(f)     EMPLOYEE has not suffered any on-the-job injury for which EMPLOYEE has not already filed a workers' compensation claim;

(g)     EMPLOYEE shall not voluntarily assist, encourage, or cooperate with any person in threatening, commencing, or maintaining an employment-related claim, action, or demand against RELEASED PARTIES for an existing claim or potential claim covered by Section 2 of this General Release, whether presently known or unknown by the threatening, commencing, or maintaining party, except as required by court order or otherwise required by law [if employee is under 40 [Nolte Only], end with a period and add "and" after semi-colon in prior provision, (e); if employee is 40 or older, include a semi-colon at this point and then add the following two provisions]

(h)     EMPLOYEE has been given at least twenty-one (21) days to consider this General Release; and

(h)     For a period of seven (7) days following the execution of this General Release, EMPLOYEE may revoke his or her acceptance by delivering a written revocation within the seven (7) day period to LasikPlus's counsel, Luis A. Santos, FORDHARRISON LLP, 101 E. Kennedy Boulevard, Suite 900, Tampa, Florida 33602.

**By my signature below, I AFFIRM AND ACKNOWLEDGE that I have read the foregoing General Release, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions answered to my satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the General Release on the date indicated below, intending to be fully and legally bound by its terms.**

| | |
|---|---|
| _____ | _____ |
| EMPLOYEE - SIGNATURE | LASIKPLUS -  SIGNATURE |
| | |
| _____ | _____ |
| EMPLOYEE -  NAME (print) | LASIKPLUS - NAME (print) |
| | |
| | _____ |
| | LASIKPLUS – TITLE |
| | |
| Dated: _____ | Dated: _____ |

3