# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MIKE PIECZYNSKI, individually and on behalf of all others similarly situated,**

      **Plaintiff,**

v.                              Case No: 6:20-cv-1457-CEM-DCI

**LCA VISION, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiffs' Unopposed Motion for Order Approving Settlement of Collective Action (Doc. 58)** |
| **FILED:** | **March 17, 2022** |

**THEREON** it is **ORDERED** that the motion be **GRANTED in part**.

### I. Background and Procedural History

On August 12, 2020, Mike Pieczynski (Plaintiff Pieczynski) filed a Complaint against LCA Vision d/b/a LasikPlus (Defendant) alleging a cause of action for unpaid overtime wages pursuant to the Fair Labor Standards Act (the FLSA) on behalf of himself and former Center Directors (CDs) who worked at Defendant's locations in the United States at any time from August 12, 2017 "to the entry of judgment in this case." Doc. 1. Since initiation of this action, Plaintiff Pieczynski has filed Notices of Consent to Join as Opt-in Plaintiffs on behalf of Catherine Nolte and Megan Lindahl (Opt-in Plaintiffs). Docs. 10, 23.

By Order dated September 24, 2021, the Court adopted the undersigned's report and recommendation and granted in part Plaintiffs' motion to conditionally certify an FLSA collective action. Doc. 36. The Court denied the remainder of the request and directed the parties to confer and file a proposed notice and motion for approval of that notice. Doc. 36 at 2. On February 1, 2022, the Court adopted another report and recommendation and approved the court-authorized notice of FLSA collective action and consent to join with certain modifications specified in that Order. Doc. 51. Two days later—prior to notice being disseminated to the 33-person conditionally certified collective[1] (Putative Members)—a mediation report was filed, which stated that the case was "completely settled." Doc. 52 at 2. On the same date, the Court directed Plaintiff to file a motion for settlement approval. Doc. 53.

Pending before the Court is Plaintiffs' Unopposed Motion for Order Approving Settlement of Collective Action. Doc. 58 (the Motion). Plaintiff Pieczynski and the Opt-in Plaintiffs (the Plaintiffs) request that the Court approve the parties' settlement agreement which includes a release (the Agreement) and dismiss the case with prejudice. Doc. 58. Plaintiffs have attached a proposed order which:

(1) approves as fair, adequate and reasonable the $215,000.00 gross settlement set forth in the Agreement;

(2) approves the proposed Notice Form attached to the Agreement, and the proposed distribution method;

(3) approves the award of the Attorneys' Fees and Costs Fund of $105,000.00 to compensate Plaintiffs' Counsel for their attorneys' fees, out-of-pocket expenses and the anticipated Settlement Administrative Costs;

(4) approves General Release Payments of $5,000.00 each to Plaintiff Pieczynski and Opt-in Plaintiff Megan Lindahl, and $2,500.00 to Opt-in Plaintiff Catherine Nolte;

---

[1]*See* Doc. 58 at 5.

(5) approves Simpluris as the Settlement Administrator;

(6) dismisses this lawsuit with prejudice;

(7) retains jurisdiction to enforce the settlement;

(8) closes this case and denies all pending motions as moot; and

(9) grants any other further relief that this Court deems just and proper.

Plaintiffs state that if the Court grants the Motion, the class administrator "will issue the notice form along with an enclosed settlement check with a consent to join form and release printed on the back to the 33 CDs who comprise the conditionally certified FLSA collective." Doc. 58 at 5.

By Order dated May 10, 2022, the Court directed Plaintiffs to supplement the Motion to address the Opt-in Plaintiffs' "objection process." Doc. 59. Plaintiffs have complied with the Order (Doc. 60) and for the reasons stated in this report, the undersigned recommends that the Court approve the settlement as fair and reasonable but reject the request to retain jurisdiction.

**II.    Applicable Law**

In *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer and under section 216(b) to recover back wages for FLSA violations. When employees bring a private action or back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Since Plaintiffs have submitted an unopposed motion, the Court must scrutinize the attached Agreement to determine if it is a fair and reasonable resolution of a bona fide dispute. *See id*. at 1354-55. In determining whether the Agreement is fair and reasonable, the Court should consider the following factors:

> (1) The existence of collusion behind the settlement;
> (2) The complexity, expense, and likely duration of the litigation;
> (3) The state of the proceedings and the amount of discovery completed;
> (4) The probability of plaintiff's success on the merits;
> (5) The range of possible recovery; and
> (6) The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

In addition to the foregoing factors, the Court must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).[3] The parties may demonstrate the reasonableness of the fees by either: 1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

### III.    Analysis

#### A.  Certification

In May 2021, Plaintiffs moved for an order pursuant to 29 U.S.C. § 216(b) to "conditionally certifying a collective of, and permitting Court-supervised notice to, all similarly situated Center Directors, Center Leaders, Center Managers and employees in similar positions with different job titles (collectively, "CDs") classified as exempt who worked for Defendant, LCA Vision, Inc. d/b/a LasikPlus ("LasikPlus" or "Defendant"), at any location in the United States during the period between August 12, 2017 through the date of the Court's Order on [the] Motion." Doc. 29 at 1-2. As stated *supra*, the Court adopted the report and recommendation and granted the request, but prior to dissemination of the notice to the conditionally certified collective, the parties mediated the matter and Plaintiffs filed the instant Motion. Doc. 58.

Plaintiffs, without opposition, seek approval of the settlement agreement but make no request concerning final certification. Even so, the issue remains outstanding, and the undersigned finds it necessary to address it prior to considering the terms of the Agreement.

It appears that the majority of approvals in other FLSA collective action settlements in the Middle District of Florida did not require such action. *See Ortiz v. Metters Indus., Inc.*, 6:17-cv-1879-PGB-DCI, Doc. 133, *report and recommendation adopted* at Doc. 133 (M.D. Fla. August 16, 2019) (citing to *Harris v. Performance Transportation LLC*, case no. 8:14-cv-02913-SDM-AAS (M.D. Fla. Oct. 27, 2016)). Further, there appears to be no binding precedent that requires different treatment of FLSA collective actions versus FLSA individual actions. Some district courts will make a determination concerning final certification (i.e., whether the plaintiffs are

similarly situated), while other district courts deem such consideration unnecessary. *Compare*, *e.g.*, *Ruddell v. Manfre*, 2015 WL 7252947, at *1-3 (M.D. Fla. Nov. 17, 2015) (deeming consideration of final certification necessary), with *Campbell v. Pincher's Beach Bar Grill Inc.*, 2017 WL 2700629, at *1-2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

The undersigned finds persuasive the authorities in which courts approved a settlement at the conditional certification stage without requiring final certification. This course of action seems to be particularly appropriate here, where Defendant never moved for decertification and the case settled prior to discovery closing and the parties filing any dispositive motions. *See* Doc. 50, Amended CMSO.

Accordingly, the undersigned **RECOMMENDS** that the request for approval of settlement proceed while the case is in the conditional certification stage.

### B. The Settlement

Plaintiffs claim that Defendant violated the FLSA by not properly paying overtime compensation to current and former CDs at its locations nationwide. Defendant disputed liability as well as conditional certification. Docs. 11, 30. Even prior to this action being filed, Plaintiffs' counsel contacted Defendant with an invitation to engage in a pre-litigation resolution of the potential claims. Doc. 58 at 3. The "pre-suit negotiations did not materialize" and Plaintiff Pieczynski filed suit. *Id*.

According to the Motion, Plaintiffs again approached Defendant after the action commenced to engage in early litigation settlement discussions. To facilitate discussions,

- 6 -

Defendant produced class data for 38 CDs employed during the liability period[4] and, per the original Scheduling Order, the parties participated in a mandatory settlement conference. *Id*. at 4. The conference was unsuccessful, and the parties subsequently engaged in written discovery "including the negotiation of an ESI protocol." *Id*. Defendant also deposed Opt-in Plaintiff Lindahl. *Id*. The conditional certification process followed and, prior to the notice being disseminated to the 33-person conditionally certified collective, on February 2, 2022, the parties again engaged in "substantial, contested negotiations, with the assistance of a mediator." *Id*. at 5.[5] This time the parties settled the action through mediation. Doc. 52.

Plaintiffs assert, with no objection, that the settlement is a fair and reasonable resolution of a bona fide dispute as it was a "hotly contested" matter where Defendant argued that the CDs were exempt from overtime compensation and, even if Plaintiffs prevailed on liability, damages should be calculated using the half-time/fluctuating workweek method rather than the time and one-half method. *Id*. at 13.

The Motion provides that as a result of negotiations, the Plaintiffs and the Putative Member's gross share of the settlement is approximately $3,484.85. The Agreement explains that the total settlement amount is $215,000.00, includes the plaintiffs' fund and the attorney fees and

---

[4] The "Relevant Period" is defined as the earlier of (i) three years prior to the filing of the consent to join forms in this case; and (ii) November 18, 2018 through February 8, 2022. Doc. 58 at 7, n.4.

[5] Plaintiffs explain that at the time the conditional certification was granted, five individuals' claims had expired and Defendant hired "no additional individuals." Doc. 58 at 5, n.1.

costs.[6] The plaintiffs' fund is the "maximum $110,000.00" to be paid to the Putative Members "for their individual settlement payments." Doc. 58-2 at 5.[7]

According to the Motion and pursuant to the Agreement, each Plaintiff and Putative Collective Member will be allocated settlement payments on a *pro rata* basis, which will be based on the number of weeks worked based on the Defendant's business records. Docs. 58 at 8; 58-2 at 11. Fifty percent of the individual shares of the plaintiff's fund will be treated as wages (and subject to the required withholdings and deductions and reported as wage income), and the remaining fifty percent of each adjusted payment will be treated as liquidated damages, interest and "other non-wage recovery." Docs. 58 at 8; 58-2 at 14.

Plaintiffs contend that the amount is a fair compromise taking into consideration that Defendant argues that it did not act willfully and, due to COVID-19, "Defendant's economic viability was impacted by the economic shutdown and slow recovery, such that this may be Plaintiffs' only opportunity to recover on these claims should protracted litigation." Doc. 58 at 13.

Upon due consideration, the undersigned finds that the settlement is a fair and reasonable resolution of a bona fide dispute and the amount of the compromise is reasonable and, therefore, **RECOMMENDS** that the Court find that the settlement is a fair and reasonable resolution of Plaintiffs' FLSA claims.

---

[6] According to the Agreement, the total settlement amount is $215,000.00, assuming the number of workweeks is not more than 3% greater than 3,253. Doc. 58-2 at 4-5. The Agreement further explains that "[i]n the unlikely event that the number of workweeks at issue is more than 4% greater than 3,253 (meaning greater than 3,351 workweeks), the plaintiffs' fund will be increased proportionally to account for all additional such weeks (without any additional attorneys' fees or costs owed by Defendant)." *Id*. at 5, n.1.

[7] The undersigned will discuss later in this report that there are general release payments of up to $12,500.00 allocated to Plaintiffs from the plaintiffs' fund. Doc. 58-2 at 5.

### C. Attorney Fees and Costs

According to the Motion and the Agreement, Plaintiffs' counsel seeks an award of attorney fees and costs which will not exceed $105,000.00. Doc. 58 at 16. Plaintiffs explain that of the $105,000.00 sought, $8,475.00 is to be paid to Simpluris for its services as settlement claims administrator. Doc. 58 at 17. Also, $761.00 represents the costs and expenses Plaintiffs' counsel incurred in court fees, service of process, and "costs for hosting ESI produced by Defendant." *Id*. at 18. As such, the total costs are $9,236.00 and "[t]he balance of the Attorneys' Fees and Costs fund, after reduction for actual costs and expenses" is $95,782.00. *Id*. at 19.

Based on the representation in the Motion, Plaintiffs' counsel worked on this case even before it was filed to negotiate the claims. Plaintiffs' counsel investigated the claims, the parties have engaged in some discovery and motions practice, and the putative collective amounts to 33 members. *Id*. at 15, 19. Plaintiffs' counsel represents that the amount does not take into account the time to be incurred through completion of the settlement administration process, which will be significant. *Id*. at 19.

Plaintiffs' state, without opposition, that the attorney fees and costs were negotiated separately, and the recoveries are not reduced by the amount and costs incurred. *Id*. at 17. Plaintiffs state that "the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the back-wages and other payments to Plaintiffs and the Putative Collective Members." *Id*. The amount was separately negotiated only after the amount in the plaintiffs' fund was settled. *Id*. at 10.

Upon due consideration, the undersigned finds that Plaintiffs' unopposed representation adequately establishes the reasonableness of the fees under *Bonetti* and **RECOMMENDS** that the

Court finds the agreement concerning attorney fees and costs does not affect the fairness and reasonableness of the settlement.

### D. The Other Terms of the Agreement

The Agreement includes a general release which applies exclusively to Plaintiff Pieczynksi and the Opt-in Plaintiffs Lindhal and Nolte. Doc. 58-2 at 5, 18. The general release is referenced within the Agreement but is a separate document attached as an exhibit to the Agreement. *See* Doc. 58-2 at 18. The general release contains a non-disparagement provision. Doc. 58-2 at 35.

The inclusion of a general release in an FLSA settlement often results in a finding that the settlement is not a fair and reasonable resolution of a plaintiff's FLSA claims. *See, e.g.*, *Bright v. Mental Health Resource Center, Inc.*, 2012 WL 868804, at *4 (MD. Fla. Mar. 14, 2012) ("Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages."); *Shearer v. Estep Const., Inc.*, 2015 WL 2402450, at *4 (M.D. Fla. May 20, 2015) (finding mutual general release prohibited the court from assessing its impact on the fairness and reasonableness of the settlement agreement).

However, courts will approve an FLSA settlement that contains a general release where the plaintiff is paid separate consideration for the provision. *See Roman v. FSC Clearwater, LLC*, 2017 WL 1653571, at *3 (M.D. Fla. Apr. 21, 2017) (approving a settlement agreement providing $100.00 as separate consideration for a general release) *report and recommendation adopted*, 2017 WL 1552304 (M.D. Fla. May 1, 2017); *see also Middleton v. Sonic Brands L.L.C.*, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (citing authority).

Here, in addition to the amount paid for the claims along with liquidated damages, the Agreement provides that $5,000.00 will be allocated to Plaintiff Pieczynski as named Plaintiff; $5,000 will be allocated to Plaintiff Lindahl as Opt-in Plaintiff, and $2,500.00 will be allocated to

Plaintiff Nolte as Opt-in Plaintiff. Doc. 58-2 at 5, 18, 34. Plaintiffs contend that these payments are "specific consideration to Plaintiffs in exchange for a general release for their own, individual claims." Doc. 58 at 16. Plaintiffs also state that the "general releases here are particularly reasonable in their breadth given that the statute of limitations would otherwise have already run for the majority of any other potential claims these three individuals would have against Defendant." *Id*. at n.9. The general release specifies the types of claims that are released and excluded from the release. Doc. 58-2 at 34-35.

In light of the additional consideration, the undersigned **RECOMMENDS** that the general release does not affect the overall fairness and reasonableness of the settlement.[8]

### E. Retaining Jurisdiction

The Plaintiffs request that the Court retain jurisdiction to enforce the terms of the settlement. Doc. 58 at 2. Courts in this District routinely deny requests to retain jurisdiction to enforce the terms of an FLSA settlement. *See, e.g., Correa v. Goldblatt*, 2011 WL 4596224, at *3 (M.D. Fla. Sept. 9, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to the absence of any compelling reason to retain jurisdiction) *report and recommendation adopted*, 2011 WL 4704196 (M.D. Fla. Oct. 4, 2011); *Smither v. Dolphin Pools of SW Fla., Inc.*, 2011 WL 2565494, at *2 (M.D. Fla. June 9, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to parties failure to present arguments or reasons in support of retaining jurisdiction) *report and recommendation*

---

[8] With respect to the Putative Members, the Agreement includes a limited release of all claims against Defendant related to the FLSA and similar state or local laws governing the payment of overtime compensation. Doc. 58-2 at 17. The limited scope of the release allays any concern that the Putative Members may be giving up unknown, but valuable, claims that are wholly unrelated to the claims at issue in this case. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *see also Bright v. Mental Health Res. Ctr., Inc.*, 2012 WL 868804 (M.D. Fla. Mar. 14, 2012).

*adopted*, 2011 WL 2580459 (M.D. Fla. June 29, 2011); *see also Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (*Popov v. George & Sons Towing, Inc.*, 2013 WL 4028208, at *1 (M.D. Fla. Aug. 7, 2013)/

The Plaintiffs do not address the retention of jurisdiction in the substance of the Motion but instead include it as part of the request for relief.  *See* Doc. 58.  As such, Plaintiffs have not included a memorandum of legal authority or provided any compelling argument to support the request.

Therefore, it is **RECOMMENDED** that the Court deny the Plaintiffs' request to retain jurisdiction to enforce the terms of the settlement.  *See* Local Rule 3.01(a).

### F.  Opportunity to Object

Plaintiffs include a section in the Motion dedicated to the argument that "[a]n objection process is not warranted."  Doc. 58 at 23-24.  The ability to object is significant because "the majority of the courts approve a settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object." *Goldsby v. Renosol Seatings, LLC*, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013) (citations omitted).

Since the Motion did not address the necessity for an objection process with respect to the two Opt-in Plaintiffs who already elected to participate, the undersigned directed Plaintiffs to supplement the Motion.  Doc. 59.[9]  Plaintiffs have done so and represent to the Court that the Opt-

---

[9] The issue concerned the Court because the Opt-in Plaintiffs have not signed the Settlement Agreement even though the document mentions each by name.  Doc. 58-2

in Plaintiffs "have been fully apprised of the terms of the Agreement, they do not object to the Agreement, and a fairness hearing remains unnecessary." Doc. 60 at 2.

In support, the Opt-in Plaintiffs each submit a declaration and state that they (1) have received a copy of the Agreement and the general release; (2) are fully apprised of the details of the Settlement; (3) have reviewed and signed the general release agreement before counsel moved for approval of the Agreement; and (4) have had an opportunity to ask counsel questions about the Agreement and general release. Docs. 60-1, 60-2. The Opt-in Plaintiffs both attest that they believe the Agreement is fair and reasonable, "want the Agreement to be approved as fair and reasonable," and do not object to the Agreement. *Id*.

To the extent an "objection process" for the Opt-in Plaintiffs is necessary prior to approval of settlement, the undersigned **RECOMMENDS** that, based on the evidence, the Opt-in Plaintiffs were granted that opportunity and do not object to the settlement.

### IV.   Conclusion

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. the Motion (Doc. 58) be **GRANTED in part** to the extent that the Court:

    a. approve as fair, adequate and reasonable the $215,000.00 gross settlement set forth in the Agreement;

    b. approve the proposed Notice Form attached to the Agreement and the proposed distribution method;

    c. approve the award of the Attorneys' Fees and Costs Fund of $105,000.00 to compensate Plaintiffs' counsel for attorneys' fees, out-of-pocket expenses, and the anticipated settlement administrative costs;

    d. approves the general release payments of $5,000.00 each to Plaintiff Pieczynski and Opt-in Plaintiff Lindhal, and $2,500.00 to Opt-in Plaintiff Catherine Nolte;

    e. approve Simpluris as the Settlement Administrator;

    f. dismiss the case with prejudice and direct the Clerk to close the case; and

2. the Motion (Doc. 58) be **DENIED** with respect to the request to retain jurisdiction to enforce the terms of settlement.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Recommended** in Orlando, Florida on May 19, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE